UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD HOFFMAN, | NO. 16-1581 |
| **Plaintiff** | |
| V. | |
| CITY OF BETHLEHEM, | **Jury Trial Demanded** |
| **Defendant** | |

## AMENDED COMPLAINT

Plaintiff Richard Hoffman hereby submits the following amended Complaint pursuant to F.R.C.P. No.15 (a)(1)(B):

1. Plaintiff is Richard M. Hoffman, an adult individual who resides at 4164 Waterford Drive, Center Valley, Lehigh County Pennsylvania.

2. Defendant is the City of Bethlehem, Pennsylvania, a third class city with administrative offices located at 10 East Church Street Northampton County Pennsylvania 18018.

3. The Plaintiff was initially hired by the Defendant in July of 2003 to serve as a police officer with the Defendant.

4. The Plaintiff held the position of patrolman with the Defendant.

5. The Plaintiff was an excellent officer who was well liked by his fellow officers and his supervisors.

6. While employed as a Patrolman for the Defendant, Plaintiff received four commendations and four complimentary letters from citizens.

7. On or about August 7, 2013, the Plaintiff was involved in an off-duty DUI that occurred in the City of Bethlehem. As a result, the Plaintiff was suspended from his position as a Patrolman, pending investigation.

8. On January 27, 2014, the Plaintiff accepted admission into the Accelerated Rehabilitative Disposition ("ARD") program in the Court of Common Pleas of Northampton County. The Plaintiff complied with and satisfied all ARD requirements.

9. The Defendant`s Disciplinary Matrix for officers involved in off-duty driving under the influence calls for a 5-20 day suspension. However, the Matrix allows for deviation based on mitigating or aggravating factors relative to each particular incident.

10. The Defendant took the position that the aggravating factors outweighed the mitigating factors, and discharged the Plaintiff. Pursuant to the collective bargaining agreement, the Plaintiff notified the Defendant that he opted for arbitration rather than a City Council hearing, based on information received that the current police chief inappropriately contacted City Council members and influenced their support before his decision to terminate. Nevertheless, the Defendant unnecessarily conducted an uncontested City Council hearing. Sixteen witnesses were presented to testify against the Plaintiff in an open forum, which revealed the Defendant's intent to besmirch the Plaintiff's character.

11. The Plaintiff was discharged by the Bethlehem City Council on March 18, 2014.

12. The Plaintiff timely grieved his termination.

13. On February 9, 2015 American Arbitration Association arbitrator Walt de Treux issued a Decision and Award in which it was concluded that the Defendant had just cause to discipline but not to discharge the Plaintiff. See Docket No. 3, Exhibit "C".

14. As a remedy, the Defendant was first directed to reduce Plaintiff's termination to a 25-day suspension, thereby reinstating the Plaintiff, since he should have never been terminated in the first place. Secondly, the Defendant was further directed to reinstate the Plaintiff to his former position, as a full-duty patrolman, with no loss of seniority, subject to the Defendant's right to require Plaintiff to submit to and successfully complete a fitness for duty evaluation.

15. No grounds existed for such an exam since there was no evidence of unfitness or impact on work performance. The Defendant never made any attempt to reform Plaintiff's alleged behavior prior to requiring a fitness for duty examination, and no other City of Bethlehem officers with a DUI or who have been suspended for 25 days have ever been required to submit to such an examination.

16. The arbitrator's requirement of such an examination was inconsistent with the reinstatement remedy and abandoned all neutrality of the remaining arbitration process by not selecting or allowing to be selected a neutral party to conduct the fitness for duty exam. Moreover, it reflected unlawful bias in the form of an utterly unsubstantiated belief that the Plaintiff was suffering from alcoholism.

17. On May 29, 2015, Dr. Frank Dattilio, a psychologist hired by the Defendant, and who, presumably, was paid by the Defendant, completed his assessment of the Plaintiff's fitness for duty.

18. The Fitness for Duty report written by Dr. Dattilio noted that the Plaintiff had exhibited some past problems with alcohol use and also reported alcohol problems afflicting a family member. As noted above, reference to genetic issues violated federal anti-discrimination law. The Fitness for Duty report, in general, contained scant discussion of the Plaintiff's current fitness for duty, which was the sole prescription of the arbitrator. It instead emphasized assumed alcoholism and issues from the past that did not impact current fitness or work performance. Neither the Plaintiff nor his witnesses who were interviewed by Dr. Dattilio were afforded the right to review shared information for accuracy or to challenge Dr. Dattilio's pervasive misrepresentations of gathered information prior to the conclusion of his evaluation.

19. Even after assessing Defendant's unsupported claims, Dr. Dattilio submitted no concrete psychological or medical evidence of unfitness, yet still wrongfully regarded Plaintiff as an alcoholic who could possibly relapse. This mischaracterization led Dr. Dattilio to prematurely assess the Plaintiff as unfit to return to patrolman status at that time, thereby stranding the Plaintiff in a prolonged state of unpaid suspension, per his initial restoration by the arbitrator. Dr. Dattilio recommended rehabilitative treatment for the Plaintiff to be able to return to full-duty as a police officer, which was consistent with The Rehabilitation Act and The Americans with Disabilities Act protections and afforded those regarded as alcoholics the opportunity to comply with treatment before rendering final assessments. Since there was no deadline for a fitness declaration, Dr. Dattilio should have precluded any initial declaration of unfit until his recommended treatment was obtained and completed.

20. Dr. Dattilio's report included four recommendations in order for the Plaintiff to return to work. Dr. Dattilio recommended that the Plaintiff maintain at least six months of straight sobriety before being considered for a return to light duty, e.g., desk duty or records room.

21. Dr. Dattilio's report stated that the Plaintiff should subsequently be monitored for an additional six months of sobriety, at which point he could then be returned to his patrol unit for completion of ongoing evaluation. Despite the fact that the Plaintiff had already been restored to light duty, a recommendation for random urine screening was also posited.

22. The Arbitrator found that the grievance would be sustained in part and denied in part. The Arbitrator found that the Defendant had just cause to discipline but not discharge, Officer Richard Hoffman.

23. The Defendant was directed to reduce Officer Hoffman's discharge to a 25-day suspension.

24. Discharge never should have occurred. Plaintiff was to serve a 25-day suspension and then be placed back at work, at which point he was to be placed back in some capacity as per the Bethlehem Police Department (BPD) discipline directive that immediately restored the Plaintiff's police power.

25. Defendant had three options to restore Plaintiff: paid leave, light duty, or full duty. Only full duty status carried any right to require a fitness for duty evaluation; light duty or paid leave did not have any such predicate obligations.

26. The City was "further" directed to reinstate Officer Hoffman to his former position as a patrolman. There was no indication that this was to be a light-duty assignment or a paid suspension.

27. There was to be no loss of seniority, subject to the city's "**right to require**" the grievant to submit to and successfully complete a fitness for duty evaluation.

28. No further "make-whole" remedy was awarded. The arbitrator wrote that Plaintiff was to "successfully complete" a fitness for duty evaluation.

29. The only condition "offered" by the arbitrator was a fitness exam to examine current fitness for return to "full duty".

30. The Plaintiff was successfully completing his fitness for duty examination, which was an ongoing process.

31. The Defendant refused to allow the Plaintiff to continue with his fitness for duty process, which involved ongoing treatment pursuant to Americans with Disabilities Act and the Rehabilitation Act protections.

32. Despite these protections and the ongoing nature of the fitness for duty process, the Defendant attempted to sever the ongoing treatment phase only two weeks before Plaintiff's return.

33. Had the arbitrator intended to create a "pass/fail" road to full return he could have simply written that in one sentence instead of delineating the process of "full" return in 2 steps.

34. Bethlehem Police Department or BPD discipline directive 1.3.2 (II)(F)(3)(d)(iv)" immediately restored full police power after suspension. Plaintiff should have been immediately issued his gun/ badge/ MPOETC ID/ Work ID/ supplies and gear/ keys/ etc. and returned to work in some paid capacity.

35. Even though the arbitrator had access to this BPD discipline directive, nothing in the arbitration award stated anything to the contrary.

36. The fact that the Plaintiff was not terminated under the arbitration award gives rise to the question why Dr. Dattilio's report was used to negate reinstatement, contrary to the treatment that was still ongoing and protected pursuant to the Americans with Disabilities Act and The Rehabilitation Act.

37. Further, the BPD Discipline Directive does not mandate a fitness for duty exam for any officer returning to full duty after being suspended for 25 days. No other officers suspended for 25 days or that have had DUI's and have been retained have been subjected to such exams.

38. The Defendant would have had to either find just cause to terminate the Plaintiff for a new offense, keep him on a light duty/paid suspension status indefinitely, or keep testing him until he passed for full duty.

39. At no point was a fitness for duty exam mandated by the Arbitrator's award. It was mentioned as something to be elected prior to restoration of full duty status only.

40. Dr. Dattilio issued his report in May, thereby continuing light duty for six more months. However, two months before Dr. Dattillio's report was issued, Plaintiff's suspension had already been served. Therefore, without any other orders, Plaintiff should have already been restored at a minimum to light-duty/paid suspension pursuant to the BPD's own discipline directives that immediately restore police authority. Light duty and paid leave does not strip an officer of police power.

41. Defendant thereby abrogated its own directive and arbitration remedy, which does not void Plaintiff's return other than to be re-established as a full-duty patrolman.

42. Although the Defendant took the position that the Plaintiff was not cleared for light duty either, that argument is moot since the Plaintiff should have been restored to light-duty/paid suspension two months prior to Dr. D'Attillio's report. Regardless, these positions did not require proof of fitness within the arbitration findings.

43. Dr. Dattillio's report did not deny clearance. It said the Plaintiff could return after six months, pursuant to protections provided for return to full duty.

44. The City of Bethlehem 2016 Budget reveals receipt of federal funds. For example, DEA Task force reimbursements.

45. The City of Bethlehem receives JAG grants (Edward Byrne Memorial Justice Assistance Grants).

46. The City of Bethlehem receives DEA and FBI reimbursement for task force investigations. The City has two officers that are also agents.

47. School Resource Officers are paid at least in part with federal funds.

48. Other grants and funds involve training (i.e. ERT and Community Policing), computer system grants, alcohol education and enforcement, 911 Fund.

49. Funds for DUI enforcement may be partially paid for by federal funds, at least through state agency pass-thrus.

50. HUD provides federal funds to The Bethlehem Housing Association (BHA). BHA in turn passes the funds to the City of Bethlehem Police who have assigned approximately 4-5 Bethlehem police officers as BHA Officers. These BHA Officers are strictly dedicated to patrolling the three housing districts within the city.

51. Plaintiff's treatment was ongoing. Had Plaintiff returned to full duty after six months as he should have, Defendant would have had the benefit of six additional months of random urine testing to truly determine if Plaintiff was an alcoholic.

52. Had Plaintiff been restored to light-duty in March when he should have been, the doctor's recommendations in May would have been much different, if even suggested at all.

53. The arbitration decided no proof of unfitness or impact on work performance. Yet, the Defendant regards the Plaintiff as alcoholic, but has no proof of any such actual medical diagnosis or any abuse of alcohol on the part of the Plaintiff or that he is incapable of performing his job.

54. Dr. Dattilio also recommended that Plaintiff continue in an ongoing recovery program for a year with a group such as Alcoholics Anonymous or its equivalent.

55. Dr. Dattilio made other recommendations, all of which point to the conclusion that the Plaintiff should be returned to full-duty within his employment upon Dr. Dattilio`s continued evaluation of the Plaintiff's compliance with his recommendations.

56. The Defendant never sent the Plaintiff back to Dr. Dattilio for continued evaluation and completion after the initial six month rehabilitation period recommended by Dr. Dattilio, even though the Plaintiff was still serving as a police officer of the City under suspension.

57. As noted, as a police officer under suspension, the Defendant abrogated Bethlehem Police Department (BPD) Discipline Directive 1.3.2 (II)(F)(3)(d)(iv) Conditions of Suspension, which clearly indicates that the Defendant was required, yet failed to return all of the Plaintiff's surrendered items without delay (e.g. badge, firearm, BPD ID card, MPOETC card, all supplies, uniforms, and equipment, etc.) upon the completion of the Plaintiff's 25-day suspension. This Directive articulates the reinstatement process and restores the Plaintiff's police authority, at a minimum to light-duty, in less than a month from the arbitrator's initial remedy decision (February 9, 2015).

58. As a result of the previous statement, the Defendant not only violated and ignored its own policies, but also violated and ignored the arbitration remedy by abandoning the Plaintiff in a prolonged state of unpaid suspension and not restoring his police authority after 25 days of completed suspension service, or approximately March 17, 2015.

59. The Defendant's disregard for its own policy impacted Dr. Dattilio's decision and recommendations for treatment since the Plaintiff should have been restored to light-duty prior to the fitness for duty assessment. The only assessment Dr. Dattilio was prescribed by the arbitrator was to accurately measure current fitness in order to restore the Plaintiff to his original position, as a full-duty patrolman.

60. As a result, the Plaintiff should not have been subject to such an intrusive and arbitrary independent medical examination since the Plaintiff should have already been restored and recognized under the Defendant's employ as light-duty.

61. The Plaintiff consulted with his own health care providers subsequent to receiving Dr. Dattilio's recommendations, and he informed the Defendant that his own health care providers had offered to provide their opinions as to the Plaintiff's fitness for duty to the City and/or to Dr. Dattilio. Plaintiff's health care providers' opinions were unequivocally adamant in their advocacy of the Plaintiff's fitness for duty.

62. The Plaintiff has never been diagnosed as an alcoholic by any physician and there is no medically documented evidence that the Plaintiff ever has been or is an alcoholic or even a recovering alcoholic.

63. More importantly, the Plaintiff complied with the arbitration award by submitting to an elected fitness for duty examination and by making every effort to comply with the directives of Dr. Dattilio.

64. At no point did the Defendant ever attempt to follow up with Dr. Dattilio's return to duty recommendations nor did Defendant inform the Plaintiff that it would be ignoring the same. For months of treatment, the Defendant did not object to Dr. Dattilio's recommendations, but instead only raised objections after being informed that the Plaintiff had complied and was prepared to return to work in November 2015.

65. Ironically, the Defendant has attempted to use Dr. Dattilio's report as a shield to justify its refusal to even consider returning the Plaintiff to light duty, even though the Defendant and Dr. Dattilio submitted no concrete medical evidence that the Plaintiff was

unfit for return to light duty before or after the post-report six month rehabilitation period had passed.

66. In a follow-up decision issued by AAA Arbitrator Walt de Treux on October 30, 2015, the Arbitrator refused to accept Plaintiff's union's request that the Plaintiff be returned to light duty. This decision permanently stranded the Plaintiff in a suspended state under the Defendant's employ, per the Arbitrator's first, sustained step of the initial remedy. The Arbitrator did not refer to Plaintiff's psychiatrist's opinions (which were the opinions of a medical doctor) nor did the Arbitrator refer to the opinions of the Plaintiff's therapist. The Arbitrator did not consider positive efforts and effects of Plaintiff's ongoing health care interactions and he did not analyze the Dattilio report for its lack of references to the Plaintiff's current fitness.

67. The Arbitrator made his decision to overrule reinstatement based purely upon Dr. Dattilio's fitness for duty assessment, which consisted of inappropriate references to unsupported allegations made by the Defendant in the arbitration proceeding, that ultimately led to preconceived notions, pervasive misrepresentations, and continued assumptions of alcoholism.

68. In the aforementioned arbitrator's decision, it was evident that the Defendant submitted no medical evidence prior to or subsequent to the aforementioned Dattilio report that would indicate that the Plaintiff was medically or psychologically unfit to return to duty or that the Plaintiff had failed or refused to follow Dr. Dattilio's recommendations for an ongoing assessment and evaluation.

69. The Defendant has unlawfully judged, and regarded Plaintiff as an alcoholic who cannot perform his duties as a police officer. Moreover, the Defendant has strategically spoon-

fed local newspapers, which resulted in over thirty news articles intended to engender negative publicity about the Plaintiff's abilities as a police officer.

70. The Defendant continues to utilize the Dattilio report as a justification for refusing to provide steps for the Plaintiff to return to his former position, even though the Dattilio report suggested ongoing monitoring and evaluation consistent with The Rehabilitation Act and Americans with Disabilities Act procedures and protections.

71. The Defendant has in effect, through the use of discriminatory, prejudicial and unjustified arguments, improperly used the Dattilio report to avoid reinstating an officer who deserves to be reinstated.

72. The Plaintiff has been unlawfully regarded by the Defendant as being an alcoholic, even though the Defendant has no justification for regarding him as such.

## COUNT 1
## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT, 29 UNITED STATES CODE SECTION 794

73. The Plaintiff incorporates by reference hereto paragraphs 1 through 72 as if set forth at length.

74. The Plaintiff clearly has no record of any medical diagnosis of alcoholism, yet the actions of the Defendant reveal that the Defendant was intent upon besmirching the Plaintiff's record with false insinuations of alcoholism or as a recovering alcoholic who has relapsed. As noted earlier, reference to genetic issues involving Plaintiff's mother's health history violated federal anti-discrimination law.

75. As noted earlier, reference to genetic issues violated federal anti-discrimination law. The Plaintiff believes that he is regarded by the Defendant as having a disability.

76. The Plaintiff believes that the actions of the Defendant indicate that the Defendant is attempting to bar him from ever being reinstated, based upon the false narrative that he has certain serious health issues involving alcohol abuse.

77. The Plaintiff believes and avers that a recovering alcoholic (which he is not) would nonetheless constitute a person with a disability within the meaning set forth in the Americans with Disabilities Act, 42 USC Section 12101 et seq and 29 CFR Sections 1630.2 et seq.

78. Under the circumstances set forth above, the Plaintiff has been subject to the final imminent demise of his employment with the Defendant, based upon the fact that he had a DUI and was referred to in a psychologist's report, by Dr. Dattilio, as having a past problem with alcohol. However, as reflected in the ARD disposition, the underlying policy rationale for first time DUI offenders is to express concern, offer assistance, and recommend rehabilitative treatment.

79. The misperception and mischaracterization of the Plaintiff's "fitness for duty" as a police officer is based upon the Defendant's improperly regarding him as an alcoholic or as a recovering alcoholic.

80. The Defendant's improper regarding of Plaintiff as being an alcoholic arises not only from Defendant's unsupported arbitration claims, but also its own refusal to allow the Plaintiff to show that he carried out the recommendations made by Dr. Dattilio.

81. The Defendant has argued that the Plaintiff is unfit for duty based on alcoholism, when in fact the Plaintiff has never received any such medical diagnosis. Defendant's use of the plaintiff's mother's past health issues violated the Genetic Information

Nondiscrimination Act (GINA) of 2008, which protects U.S. citizens from genetic discrimination in employment as well as in health care and health insurance.

82. Pursuant to the Rehabilitation Act and the Americans with Disabilities Act, Dr. Dattilio's assessment that the Plaintiff could take certain steps to rehabilitate himself from alcohol abuse would render the Plaintiff as an employee protected under the scope of said statutes.  Under such protections, Dr. Dattilio should have precluded a declaration of unfit until the time his recommended treatment was completed and compliance was assessed. Dr. Dattilio's unfounded declaration misled the arbitrator into assuming the Plaintiff's alcoholism, and therefore unfitness, based on Dr. Dattilio's discriminatory and premature assessment. This ultimately impacted the arbitrator's final interpretation and his decision to overrule reinstatement. As a result, the rehabilitative process and a career in law enforcement was discriminatively severed only weeks short of the Plaintiff's right to finally return to light-duty, per over five months of Plaintiff's complete cooperation and compliance with treatment recommendations.

83. The Plaintiff believes and avers that the Defendant was aware of Dr. Dattilio's recommendations for rehabilitation, but chose not to allow Plaintiff to submit any medical proof that he had complied with Dr. Dattilio's recommendations.

84.  The Plaintiff believes and therefore avers that the Defendant has willfully and intentionally violated federal disability laws and regulations.

85. The Plaintiff believes, and therefore avers, that as a result of the Defendant's actions in barring his reinstatement, he has and will continue to incur serious harm and damage, including, continuing emotional distress, embarrassment, humiliation, loss of reputation, loss of self-esteem, and inability to work as a police officer.

86. The Plaintiff has suffered and will continue to suffer irreparable injury caused by the Defendant's illegal conduct. The Plaintiff was, in essence, terminated twice without just cause and without being allowed to fulfill Dr. Dattilio's recommendations for ongoing evaluation and assessment.

87. The Plaintiff believes, and therefore avers, that he is entitled to reinstatement, as well as monetary damages as a result of the individual Defendant's discriminatory behavior in causing him to be barred from reinstatement.

88. As a result of the Defendant's illegal conduct, the Plaintiff has and will continue to suffer irreparable injury caused by the Defendant's conduct.

89. By reason of the malicious, wanting and willful conduct of the Defendant, the Plaintiff demands reinstatement of his employment, reimbursement of back pay and lost benefits, as well as emotional distress and compensatory damages

WHEREFORE, the Plaintiff respectfully requests this Honorable Court to award judgment in favor of the Plaintiff and against Defendant, in an amount in excess $150,000.00, as part of said award to grant the Plaintiff the following damages:

(a) Actual and consequential damages as may be proven, plus interest;

(b) Compensatory damages to compensate for the pain, suffering and humiliation that Plaintiff suffered as a result of the Defendant's unlawful actions; and

(c) Plaintiff further prays for an award of costs incurred in this action plus a reasonable attorney's fee as provided in the Rehabilitation Act.

Respectfully submitted,

/s/ *Donald P. Russo*
_____
DONALD P. RUSSO, ESQ.
Attorney for Plaintiff